UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MURIEL DARLENE BROWN,

    Plaintiff,

vs.                                            CIVIL NO. 2:08-CV-11346

MICHAEL J. ASTRUE,                DISTRICT JUDGE. MARIANNE O.
COMMISSIONER OF SOCIAL SECURITY,      BATTANI
                                                              MAG. JUDGE. STEVEN D. PEPE

    Defendant

_____/


**Report and Recommendation**

**I.    Background**

Muriel Darlene Brown ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Both parties have filed motions for Summary Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

    **A.    Procedural History**

Plaintiff filed an application for DIB on September 24, 1997 alleging a September 5, 1997, onset of disability due to swelling in her feet, ankles, knees, shoulders and arms, bad

nerves, numbness in right leg and neck stiffness. (October 4, 2004, Disability Report, R. 80-99). On January 15, 1998, Plaintiff was found to be disabled as of September 1, 1997 (R. 33). On January 23, 2004, the State Agency determined that Plaintiff was no longer disabled (R. 38-39). She requested a hearing, which was held before Administrative Law Judge (ALJ) E. Patrick Golden on April 28, 2006 (R. 23-25). Darius Miller, Plaintiff's cousin, and Mildred Shears, Plaintiff's aunt, testified on her behalf. Vocational Expert Elizabeth Pasikowski also testified. Plaintiff had no attorney at the hearing. On November 14, 2006, the ALJ issued an opinion determining that Plaintiff's disability ended as of January 1, 2004 (R. 14-21). This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on January 28, 2008 (R. 5-7).

**B.   Background Facts**

   **1.   Plaintiff's Background**

Plaintiff was born on July 8, 1963 (R. 33). On September 1, 1997, when she was 34 years old, Plaintiff was found to be disabled because she met the requirements of Section 9.09A of the Listing of Impairments, describing obesity (R. 33).[1] At that time, Plaintiff weighed 265.5 pounds (R. 210-13). She also complained of difficulty walking, due primarily to right hip and right knee problems. Plaintiff exhibited limited ranges of back and leg motion, but the examining doctor was unable to detect any reflex or strength deficits (*id.*).

---

[1] Listing 9.09 for obesity was deleted August 24, 1999. See Social Security Ruling 02-1p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity. Under 9.09A, an individual of Plaintiff's height, 64" tall, would be presumed disabled if she weighed at least 258 pounds, and experienced a history of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine, accompanied by imaging documentation of arthritis. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 9.09A (1999).

Plaintiff completed 12th grade (R. 33). She has no relevant past work history as she has not worked in over twenty years (R. 63, 65). However, when she did work, she performed heavy unskilled labor jobs (R. 236)

At her April 2006 hearing Plaintiff testified that she weighed 225 pounds (R. 230). Plaintiff noted that she was unable to work due to arthritis which caused her to wear a knee brace (R. 228-29). Plaintiff described limited daily activities (R. 230-31) and claimed to be depressed (R. 231). Plaintiff also reported that she seeks treatment from her primary physician, Dr. Prahari. twice per month and that due to her chronic pain, she lies around all day (*id.*).

Plaintiff's cousin, Darius Miller who resides with Plaintiff, also testified at the hearing. He testified that Plaintiff was in pain a lot and that he often would massage her back and legs (R. 233). He also reported Plaintiff was a loner and that she was very depressed (R. 224). Plaintiffs aunt, Mildred Shears, testified that Plaintiff wears a knee brace and walks with a cane due to her back, leg and knee problems (R. 235). She indicated that Plaintiff suffers from osteoarthritis, diabetes and has difficulty walking .

   2.   **Medical Evidence**

Physiatrist Anjum Sadiq, M.D. examined Plaintiff in October 2003 at the request of the State Agency. Dr. Sadiq found that Plaintiff weighed 200 pounds (R. 216-17). Dr. Sadiq noted Plaintiff's complaints of a constant sharp pain in her low back along with weakness in the legs when she stands for long periods of time (R. 216). While Plaintiff used a cane, she was not currently seeing a doctor for her physical complaints, which had been treated with an injection in her back, pain medications, elevating her legs and a heating pad. Dr. Sadiq further reported that Plaintiff ambulated slowly with impaired weight bearing on the right side (R. 217). In addition,

3

he noted that Plaintiff could barely squat due to her back problems. Dr. Sadiq found that strength, sensation, reflexes and coordination were all normal. He opined that Plaintiff did not require a cane for walking. Dr. Sadiq's ultimate impression was that Plaintiff's back injury from the car accident caused her "chronic, radicular low back pain", and that she also suffered from borderline diabetes mellitus (R. 216-17).

Two state agency physicians reviewed Plaintiff's medical records and completed Residual Functional Capacity Assessments in October 2003 and May 2004 (R. 156-71). They concluded Plaintiff could lift 10 pounds frequently, stand at least 2 hours in a workday, sit with normal breaks for about 6 hours in a normal workday and had no limitations for pushing and pulling during a workday. The physicians also concluded Plaintiff could climb stairs and ramps, balance, stoop, kneel, crouch, and crawl occasionally (R. 165-66, 157-58).

On December 12, 2003, Dr. A. Kumar, M.D., a psychiatrist, examined Plaintiff. Dr. Kumar observed that Plaintiff had low self esteem and looked withdrawn and depressed but noted that she was not seeing a psychiatrist (R. 221). Plaintiff reported to Dr. Kumar that the arthritis, muscular problems, diabetes and obesity prevent her from functioning and that makes her more depressed. She further reported crying spells, poor sleep, exhaustion, poor appetite, and vague suicidal thoughts, but no attempts. Plaintiff reported being a loner and not socializing with other people and having a "so-so" relationship with her family. Dr. Kumar noted Plaintiff's history of drinking. Dr. Kumar also noted that Plaintiff has never been admitted to a psychiatric hospital, was not seeing a psychiatrist, and was taking no psychotropic medications. Dr. Kumar diagnosed dysthymic disorder, history of alcohol abuse, and borderline personality disorder, with

a GAF of 47 (*id.*).[2]  Dr. Kumar concluded: "The prognosis is guarded.  In my professional opinion, this claimant is not able to manage her benefit funds until she totally sobers up" (R. 222).

On January 20, 2004, Donald Tate, Ph.D., a psychologist, reviewed the record and found that Plaintiff has affective disorder associated with substance addiction (R. 184.)  Dr. Tate concluded that Plaintiff's affective disorders mildly limit her daily living activities, social function and her ability to maintain concentration, persistence or pace (R. 186).

In a brief note dated May 10, 2006, Plaintiff's primary doctor, Amitarian Paharia, M.D. reported that Plaintiff still has on-going health problems. Specifically, Plaintiff suffers from hypertension, diabetes, asthma/COPD, allergies, osteoarthritis with moderate to severe pain, obesity and GERD. Dr. Paharia further reported that Plaintiff is on numerous medications and sees specialist often (R. 224).

On May 13, 2004, psychiatrist Zahra Khademian, M.D., reviewed the record and found that Plaintiff suffers from borderline personality disorder and affective disorder related to alcohol addiction (R. 179, 184, 190, 193, 198, 202).  Dr. Khademian concluded that Plaintiff experienced

---

[2]The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed.1994) at 30. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* at 32.  A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *id*.  A GAF of 41 to 50 means that the patient has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *id*.  A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.  *id*.

moderate limitations of her ability to remember detailed instructions and maintain attention for prolonged periods but was not significantly limited in other aspects of workplace functioning (R. 172-4). Dr. Khademian expressed the belief that Plaintiff could perform simple work on a regular basis (R. 172-74).

### 3.     **Vocational Evidence**

VE Elizabeth Pasikowski appeared at Plaintiff's administrative hearing. The ALJ asked VE Pasikowski whether there are sedentary jobs in existence. Ms. Pasikowski responded that there were 5,000 assembler positions, 2,400 sorter positions and 2,100 packer positions available in Michigan (R. 236-37).

### 4.     **ALJ Golden's Decision**

ALJ Golden found that the most recent favorable medical decision finding that Plaintiff was disabled was the determination dated January 15, 1998. As of that date, Plaintiff had the following medically determinable impairments: obesity, degenerative joint disease of the knees, and minimal scoliosis. These impairments met section 9.09A of 20 CFR part 404 Subpart P, Appendix 1 (20 CFR 416.920).

ALJ Golden further found that the medical evidence establishes that Plaintiff did not develop any additional impairments after January 15, 1998. To the contrary, the ALJ found that as of January 1, 2004, Plaintiff's obesity had improved, as she lost weight, from 265 to 200-220. This improvement related to Plaintiff's ability to work, because Plaintiff no longer had an impairment meeting a listing.

Focusing on her conditions as of January 1, 2004, the ALJ concluded that Plaintiff's history of obesity, arthritis and depression qualified as "severe" impairments within the meaning

of the Regulations, but not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, or Regulations No. 4 (R. 18-19).

In making this finding, ALJ Golden concluded that Plaintiff's depression creates no more than mild limitations in Claimant's ability to perform activities of daily living, maintain social interaction, and maintain concentration, persistence and pace (R. 16). To reach this conclusion, ALJ Golden considered Plaintiff's demeanor at the hearing along with her testimony about the source of limitations on her daily activities. The ALJ also considered Dr. Kumar's and Dr. Sadiq's reports, along with the testimony of Plaintiff's aunt and her cousin and questionnaires completed by Plaintiff's friend and aunt. The ALJ noted that Plaintiff was not taking any psychotropic medications and had not sought any mental health treatment. Additionally, Dr. Kumar found Plaintiff to be vague and superficial. Although Dr. Kumar evaluated Plaintiff's GAF to be 47, the doctor also noted that she was impacted by alcohol abuse. Therefore, the ALJ found the GAF evaluation to be inconsistent with the diagnosis or Plaintiff's presentation before Dr. Kumar or at the hearing (R. 16-19).

ALJ Golden found that Plaintiff had a residual functional capacity (RPC) to lift at least 10 pounds occasionally, lift less than 10 pounds frequently, sit for at least six of eight hours in a work day, stand or walk for at least to of eight hours in a work day; push or pull without limitation, perform postural activities occasionally, perform any manipulative functions; see, hear and speak without limitation; and perform work in any environment (R. 18-19). As far as mental function, ALJ found that Plaintiff retains the ability to understand, remember and carry out simple instructions, make judgments on simple work-related decisions; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressures in a usual

7

work setting, and respond appropriately to changes in a routine work setting (*id*.).

In assessing Plaintiff's RFC, ALJ Golden found the Plaintiff's allegations of depression were not entirely credible in light of Plaintiff's failure to seek treatment, and the lack of any testimony or records indicating any limitations imposed by her mental state (R. 16-17). ALJ Golden also found that Plaintiff's statements concerning the intensity, duration and limiting effect of the symptoms from her medical ailments were not entirely credible (R. 19). ALJ Golden noted that Plaintiff has not worked in more than 20 years and shows no motivation to do so. Also, he found that Plaintiff has not been noted to be in any degree of distress as one might expect given her allegations. Nor does Plaintiff take medications of the type one would expect given her claims. Accordingly, ALJ Golden determined that Plaintiff's ailments impose no more than minimal limitations on Plaintiff's ability to work (R. 18).

ALJ Golden found that Claimant has no past relevant work but did find that a significant number of jobs existed in the national economy as identified by the VE that she could perform (R. 20). Thus, she was not disabled within the meaning of the Social Security Act (R. 20).

**II.    Analysis**

**A.    Standards of Review**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment(s) must be of such severity that the individual can neither do her previous work nor engage in any other kind of substantial gainful work which exists in the national economy, considering his age, education,

and work experience.  *See id.* § 423(d)(2)(A).

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).   The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  *id*.  If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.  *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  In determining the existence of substantial evidence, it is not the function of a federal court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

When the cessation of benefits is at issue, the ALJ must inquire whether the claimant's medical impairments have improved to the point where she is able to perform substantial gainful activity.  42 U.S.C.  § 423(f)(1).  The regulations establish a two-step process to determine

whether a claimant has a continuing disability. In the first step, the ALJ must assess whether the claimant has experienced any medical improvement related to the claimant's ability to work. Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and increase in your functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(1). In the second step of the process, the ALJ must assess whether the claimant has the current ability to engage in any substantial gainful activity. Unlike initial disability proceedings, though, "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Kennedy v. Commissioner of Soc. Sec.*, 247 Fed. Appx. 761 (6th Cir. 2007).

      B.      <u>Factual Analysis</u>

In her motion for summary judgment, Plaintiff argued that ALJ Golden (1) erred in determining that Plaintiff's medical impairments have improved to the point where she is able to perform substantial gainful activity; and (2) failed to develop an adequate record. (Dkt. # 11).

            1.      **The SSA's Finding that Claimant's Medical Condition Has Improved.**

Plaintiff first challenges the Commissioner's finding that her medical condition has improved to the point that she is able to perform substantial gainful activity. Aside from her weight, which Plaintiff argues continues to render her disabled, Plaintiff notes that she has arthritis that has plagued her since her initial disability determination and that meets the listing for arthritis. See 20 C.F.R. Sec. 404 pt. P. APP 1 § 1.02. Plaintiff also contends that she

developed depression since 1998 that meets or equals the listing.  20 C.F.R. 404, pt. P, APP 1 §12.04.  (Dkt. # 11 at 7-12).

Plaintiff fails to address the relevant standard for evaluating improvement for an individual who was previously found to have met a listed impairment. 20 C.F.R. § 416.994(b)(2)(iv)(A).  Plaintiff was previously found disabled because she met Section 9.09A of the Listing of Impairments (R. 33).  20 C.F.R. Part 404, Subpart P, Appendix 1 § 9.09 (1999), which relates to obesity.  Because Plaintiff was previously found to have met a listed impairment, she is considered to have experienced medical improvement related to her ability to work if she no longer meets that listed impairment.  20 C.F.R. § 416.994(b)(2)(iv)(A).  Although Listing 9.09A has been deleted, an individual's disability will not be found to have ended just because of that deletion.  Social Security Ruling ("SSR") 02-1p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity.

The Agency has set forth its policy for evaluating continuing disability in cases involving obesity:

> What Amount of Weight Loss Would Represent "Medical Improvement"? Because an individual's weight may fluctuate over time and minor weight changes are of little significance to an individual's ability to function, it is not appropriate to conclude that an individual with obesity has medically improved because of a minor weight loss. A loss of less than 10 percent of initial body weight is too minor to result in a finding that there has been medical improvement in the obesity. However, we will consider that obesity has medically improved if an individual maintains a consistent loss of at least 10 percent of body weight for at least 12 months. . . . .If we find that there has been medical improvement in obesity or in any coexisting or related condition(s), we must also decide whether the medical improvement is related to the ability to work.

SSR 02-1p.

The record confirms that Plaintiff's weight has improved greater than 10 percent and that

she has maintained her weigh loss for more that 12 continuous months.  In 1998, Plaintiff weighed 265.5 pounds, exceeding the weight of 258 pounds required for a woman of Plaintiff's height to meet Listing 9.09A (R. 210).   Plaintiff has lost considerable weight since that time; between October 2003 and April 2006 she was weighed at 200, 215, and 225 pounds (R. 216, 221, 230).  Even using the highest of these weights, 225 pounds, Plaintiff had lost more than forty pounds since she had been found to meet Listing 9.09A, a loss of more than 15% of her past weight.  At 225 pounds, Plaintiff was 33 pounds under the weight required to meet Listing 9.09A.

Having determined that Plaintiff experienced medical improvement as of January 2004, the ALJ reasonably determined that she did not exhibit an impairment or combination of impairments that met or equaled any other listed impairment (R. 18-19).  Plaintiff bears the burden of proving that she meets or equals a different listed impairment.  *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).  Yet, no doctor opined that Plaintiff met any listed impairment.  To the contrary, every doctor who expressed an opinion agreed that Plaintiff's physical and emotional impairments did not meet or equal any listed impairment (R. 156-71, 176-88, 190-202).

Plaintiff insists that her medical condition has not improved because she continues to meet Listing 1.02 or 1.04 for arthritis, which has plagued her since her first disability determination.  But, Plaintiff has never been found to have exhibited arthritis of a severity sufficient to meet Listing 1.02 or 1.04.  The objective medical findings required to satisfy these sections of the Listing of Impairments greatly exceed the findings required to meet Listing 9.09A.  Absent her historical obesity, Plaintiff would not have met Listing 1.02 or Listing 1.04 in

1998 when she was found to be disabled.  As of January 2004, once Plaintiff had lost weight such that she no longer met Listing 9.09A, it was reasonable for the ALJ to find that her arthritis alone did not meet Listings 1.02 and 1.04.

Finally, Plaintiff briefly argues that she would be unable to perform the jobs the vocational expert VE identified due to current economic conditions.  (Dkt. # 11 at 12).  Whether or not Plaintiff would actually obtain a job the VE identified is irrelevant, as long as she can perform the exertional and nonexertional requirements of such work.  20 C.F.R. § 416.966(c).

### 2. The Adequacy of the Record

Plaintiff complains that the ALJ failed to compile an adequate record.  Plaintiff notes that she had no attorney at the hearing, which she contends placed a heightened duty on the ALJ to ensure that the evidence was fully developed.  Nevertheless, the ALJ did little at the hearing to probe into Plaintiff's medical history, background, activities or ailments.  Plaintiff points out that the administrative hearing lasted only 16 minutes, and spanned only 12 pages of transcript (See R. 228-239).

By focusing solely on the length of the administrative hearing in this case, Plaintiff misapprehends the ALJ's duties.  When a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed.  *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1051 (6th Cir. 1983).  However, the mere fact that a claimant was unrepresented is not grounds for reversal.  *Holden v. Califano*, 641 F.2d 405, 408 (6th ir. 1981).  Moreover, the ALJ's duty is focused on the completeness of the record as a whole, rather than simply length of the hearing.  Indeed, in *Duncan v. Secretary of HHS*, 801 F.2d 847, 855 (6th Cir. 1986), the Sixth Circuit

found that an ALJ had fulfilled his duty to develop the record for an unrepresented claimant despite holding a short hearing. The court concluded:

> The record in the present case was not adversely affected by the lack of representation or the relatively short hearing. The brevity of the hearing did not result in unfair or unsupported conclusions, c*f. Lashley* [*v. Secretary of Health and Human Services*], 708 F.2d [1048 (6th Cir. 1983)] at 1052, and Duncan's mistaken responses to several questions did not unfairly taint the ALJ's findings. Duncan's failure to remember the medications he had taken, or the correct date on which he last worked, was simply not significant and was not mistakenly relied on by the ALJ. Further, Duncan has not suggested, and we are unable to determine, what possible further information could have been brought forth at the hearing which would have enhanced a determination of disability. *Cf. Lashley,* 708 F.2d at 1053. The ALJ thoroughly reviewed the evidence presented in this case and adequately discussed in his decision his analysis of Duncan's claims, the medical exhibits and the testimony. We fail to see how, under these circumstances, Duncan has been denied a full and fair hearing.

801 F.2d at 855.

As in *Duncan*, the record in this case included extensive medical and psychological reports and opinions and lay witness statements concerning Plaintiff's ailments and ability to work. Specifically, the record included three reports by consulting physicians, two reports from different psychiatrists, a report from a psychologist, and a note from plaintiff's treating physician. The record also included statements by Plaintiff's aunt and friend and brief testimony from Plaintiff, her aunt and her cousin. As in *Duncan*, the ALJ reviewed and accounted for this extensive evidence in arriving at his conclusion. The relatively short hearing does not detract from the completeness of the record and does not suggest that the ALJ failed to comply with his duties.

**IV.     Recommendation**

14

For the reasons stated above, it is Recommended that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 28, 2009                                    s/Steven D. Pepe
Ann Arbor, Michigan                                     United States Magistrate Judge

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing *Report and Recommendation* was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 28, 2009.

                                      s/Deadrea Eldridge
                                      Generalist Deputy Clerk